UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARY GILTNER, )<br>)<br>　　　　Plaintiff )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** )<br>)<br>　　　　Defendant ) | Civil No. 08-285-B-W |

# REPORT AND RECOMMENDED DECISION[1]

This plaintiff in this Supplemental Security Income ("SSI") appeal returns to this court after an earlier remand of this case to the Social Security Administration. The instant appeal raises the question of whether, despite her allegation of disability stemming from orthopedic and mental health problems, she is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Following remand and rehearing, and in accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of degenerative disc disease, depressive disorder NOS [not

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 20, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

otherwise specified], and anxiety disorder NOS, although she had no impairment or combination of impairments that met or equaled those listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Findings 2-3, Record at 230-31; that she retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.927(b), except that she was limited to unskilled work, could not climb ladders, ropes, or scaffolds, could not climb, balance, stoop, kneel, crouch, crawl, or climb ramps or stairs more than occasionally, had to avoid frequent overhead work, and was limited to low-stress work, defined as work involving occasional judgment and decision-making, occasional changes in work setting, no more than occasional, incidental public contact, and occasional interaction with co-workers and supervisors, Finding 4, *id.* at 232; that, considering her age (45 years old, defined as a younger individual, on the date her application was filed), education (at least high school), work experience (transferability of job skills not an issue), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id.* at 235-36; and that she therefore had not been under a disability since June 4, 2004, the date her application was filed, Finding 10, *id.* at 236. The Appeals Council declined to review the decision, *id.* at 213-15, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff argues that the administrative law judge erred in (i) determining that her psychiatric condition did not meet or equal one of the Listings, (ii) arriving at a mental RFC determination unsupported by competent evidence, and (iii) engaging in a flawed credibility analysis.  *See* Statement of Specific Errors ("Statement of Errors") (Docket No. 7) at 2-13.  I discern no reversible error and, accordingly, recommend that the decision be affirmed.

## I.  Discussion

### A.  Listings: "Paragraph B" Criteria

The administrative law judge found that the plaintiff's psychiatric impairments did not satisfy the so-called "paragraph B" criteria of Listings 12.04 and 12.06, which require demonstration of at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration.  *See* Record at 231.  He concluded that she had only mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, and that she had experienced no episodes of decompensation.  *See id.*

The plaintiff challenges two of those findings. *See* Statement of Errors at 2-5. With respect to social functioning, she argues that the administrative law judge cited no support for his conclusion that records of treating and examining sources reflected no significant difficulties in social functioning, *see* Record at 231, and in fact the converse is true, *see* Statement of Errors at 2-3. With respect to concentration, persistence, or pace, she contends that the administrative law judge misinterpreted the evidence. *See id*. at 4-5.

### 1. Mild Restriction in Social Functioning

As the plaintiff notes, *see id.* at 2, the administrative law judge cited no specific records in support of his observation that records of treating and examining sources disclosed no significant restrictions in her social functioning, *see* Record at 231. As she further points out, *see* Statement of Errors at 2-3, the statement is inaccurate. The record contains evidence from a treating psychologist, Dannel H. Starbird, Ph.D., and a Disability Determination Services ("DDS") examining psychologist, Robert L. Gallon, Ph.D., indicative of significant restriction in social functioning, *see* Record at 439-40 (mental RFC form completed on November 14, 2007, by Dr. Gallon indicating that the plaintiff would have marked difficulty in dealing with the public and in demonstrating reliability), 460 (letter from Dr. Starbird dated December 19, 2007, describing the plaintiff as impatient, irritable, suffering from a depressed mood, having a predominantly sad and anxious affect, and crying a lot and for no apparent reason).

Nonetheless, the error is harmless. As the administrative law judge pointed out elsewhere in his decision, *see id*. at 234:

1.   The plaintiff sought no mental health treatment until February 15, 2005, when she was "self-referred [to Community Health and Counseling Services ("CHCS")], with encouragement from her physical therapist, for therapy, to address stress/pain management and

4

depression[,]" *id*. 310 (noting that the plaintiff reported "no prior mental health treatment" and that "she has never been one to seek out help").[2] On April 22, 2005, her CHCS services were terminated when she was referred for therapy for help with pain management. *See id*. at 299.

      2.    There is no evidence of record that the plaintiff sought any mental health treatment from then until September 21, 2007, when she was first seen by Dr. Starbird. *See id*. at 458.

      3.    While a CHCS counselor assessed the plaintiff with a Global Assessment of Functioning, or GAF, score of 50, denoting serious impairment, his assessment was based primarily on her description of her symptoms and functional difficulties and was not supported by a documented history of serious mental health problems. *See id*. at 301-11. Mental status examination revealed her to appear depressed but to be cooperative, friendly, logical, alert, and oriented, with intact memory and judgment. *See id*. at 309.

To this extent, examining and treating source records fairly could be characterized as disclosing no significant restriction in the plaintiff's social functioning.

In addition, the administrative law judge buttressed his finding regarding social functioning with reference to evidence of the plaintiff's actual functioning indicative of mild restrictions and to the testimony of Dr. James Claiborn, a psychologist who served as a medical expert at her post-remand hearing. *See id*. at 231-32. He supportably found that the plaintiff socialized with friends and family and worked part-time as a bartender, a job that entailed interaction with others, and that Dr. Claiborn testified that the medical evidence supported a finding of mild restriction in social functioning. *See id.*; *see also, e.g., id*. at 192, 307, 470, 479.

---

[2] At her hearing prior to remand, held on April 21, 2006, the plaintiff denied that her depression and anxiety caused symptoms. *See* Record at 199. Although her primary care physician, John Cox, M.D., had prescribed Xanax since 1995, *see id*., Dr. Cox based his opinion that she was disabled on her physical restrictions, *see id*. at 178.

In short, while there was conflicting evidence as to the degree of restriction in the plaintiff's social functioning, substantial evidence supported the finding that it was only mildly restricted. The administrative law judge's mischaracterization of the records of treating and examining sources accordingly is harmless.

### 2. Moderate Restriction in Concentration, Persistence, or Pace

With respect to concentration, persistence, or pace, the administrative law judge found:

> The evidence supports a conclusion that the claimant's depression and anxiety, in combination with her chronic pain, interfere to a moderate degree with her capacity for sustained concentration. However, the medical record does not document a marked limitation in this area. Although psychologist Robert Gallon, Ph.D., who evaluated the claimant in November 2007, opined that she would have frequent difficulty maintaining concentration, persistence or pace (Exhibit 30F), he did not observe any marked limitations in this area. Other medical sources also do not document marked deficiencies in the claimant's capacity for concentration, persistence or pace.

*Id*. at 231.

As the plaintiff correctly points out, *see* Statement of Errors at 4, the administrative law judge mischaracterized Dr. Gallon's findings. The form that Dr. Gallon filled out did not permit him to characterize restrictions in that area as "marked"; rather, the choices were: never, seldom, often, frequent, constant, and insufficient evidence. *See* Record at 439. The choice of "frequent" does appear to correspond with "marked" limitations, in that the scale in which the term "marked" appears consists of the choices none, slight, moderate, marked, extreme, and insufficient evidence. *See id*.

Yet, the administrative law judge also relied on the fact that other medical sources did not document marked deficiencies in this area. *See id*. at 231. He correctly noted that Dr. Claiborn's testimony supported his finding. *See id*. at 232, 479. While, in her second point of error, the plaintiff challenges the competence of Dr. Claiborn's testimony to serve as substantial evidence,

6

*see* Statement of Errors at 5-8, she does not do so with respect to her Listings argument, *see id*. at 1-5.

Again, the administrative law judge permissibly resolved a conflict in the evidence in favor of a finding of a lesser degree of restriction.

### B.  Mental RFC

The plaintiff next challenges the administrative law judge's finding that she was capable of engaging in low-stress work, defined as work involving occasional judgment and decision-making, occasional changes in work setting, no more than occasional, incidental public contact, and occasional interaction with co-workers and supervisors.  *See id*. at 5.

In so finding, the administrative law judge accorded little weight to the opinions of Drs. Starbird and Gallon, which he deemed "not consistent with the longitudinal record, which does not document serious psychopathology."  Record at 235.  He accorded greater weight to the opinion of Dr. Claiborn, "as he is a highly qualified professional by virtue of his training and experience, and he had knowledge of the entire evidentiary record."  *Id*.  He elaborated:

> Dr. Claiborn cited the claimant's very limited history of treatment for psychological problems in support of his assessment of the severity of her mental impairments.  He also pointed out that, despite her minimal treatment, she has not required any hospitalization due to uncontrolled anxiety or depression.  He noted that Dr. Starbird's comments regarding the claimant's observed level of distress were inconsistent with other treating source notes, which tend to support a lesser degree of impairment.  Dr. Claiborn's opinion is supported in large measure by the assessment of the State agency reviewing psychologist, who concluded that the claimant's functioning was at most mildly impaired (Exhibit 23F).  While the undersigned finds that the claimant's depression and anxiety are severe, the limited treatment history and indications of symptom magnification argue against a finding that they preclude all sustained work activity.

*Id*.

The plaintiff first complains that the administrative law judge improperly disregarded all of the opinions of treating and examining sources as inconsistent with the longitudinal record

7

when the records and opinions of Dr. Starbird, Dr. Gallon, and CHCS *were* the longitudinal record.  *See* Statement of Errors at 5.

Her point is not well-taken.  The longitudinal history in this case includes not only treatment, but also lack thereof.  As noted above, the plaintiff first sought mental health treatment at CHCS on February 15, 2005, terminated that service on April 22, 2005, and evidently sought no further mental health services until September 21, 2007, when she first saw Dr. Starbird.  *See* Record at 299, 310, 458.

In addition, while CHCS assessed the plaintiff on intake with a GAF score of 50, *see id*. at 311, indicating serious symptoms, *see* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) ("DSM-IV-TR"), two non-examining DDS experts who had the benefit of the CHCS notes, psychologist Brenda Sawyer, Ph.D., and board-certified psychiatrist B. Rudnick, M.D., assessed her mental impairment as non-severe, *see* Record at 319, 331, 366.[3]

The plaintiff next complains that the administrative law judge erred in relying on "indications of symptom magnification" in assessing her mental RFC.  *See* Statement of Errors at 6 (quoting Record at 235).  She contends that, in so finding, he misconstrued the reports of Drs. Gallon and Starbird and impermissibly interpreted Dr. Gallon's raw test results.  *See id*.; *see also, e.g., Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990) (although an administrative law judge is not precluded from "rendering common-sense

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning."  DSM-IV-TR at 32.  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning."  *Id.*  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *Id.* at 34.  A score of 50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.* (boldface omitted).  The CHCS counselor who evaluated the plaintiff's GAF checked boxes indicating that she had problems relating to the social environment, occupational problems, and economic problems.  *See* Record at 311.

judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record").

I find no error in the administrative law judge's simple observation. Both the Gallon and the Starbird reports can be discerned, even by a layperson, to contain indications of symptom magnification. *See* Record at 436 (report of Dr. Gallon that the plaintiff's positive score on 13 of 14 items in the Matheson Symptom Magnification Structured Interview suggested "extreme symptom magnification in which she has developed highly dysfunctional beliefs and attitudes entrapping her in a chronic pain condition"), 460 (report of Dr. Starbird that psychological testing (the MMPI) had yielded "a profile of questionable validity[,]" although "[t]he magnitude of [the plaintiff's] distress during interviews appears very severe, and thus interpretation with caution appears appropriate").

While Dr. Gallon made clear that his testing results indicated that the plaintiff was not malingering, that is, not "just simulating a mental condition[,]" he also explained that the results "suggest[ed] a response style of negative presentation that would lead a clinician to form a more negative impression than might be objectively warranted." *Id.* at 437. Thus, the plaintiff's actual clinical scale profile, which was "extremely elevated in almost all the clinical scales" and suggested "a major mental illness[,]" "probably [was] invalid." *Id.*

Further, while Dr. Starbird was disinclined to judge the plaintiff's MMPI profile invalid given the magnitude of the distress he had observed, that does not undercut the accuracy of the administrative law judge's observation that the testing was indicative of symptom magnification.

The plaintiff finally challenges the administrative law judge's mental RFC finding on the ground that he relied on testimony of Dr. Claiborn that was flawed and, hence, cannot constitute substantial evidence. *See* Statement of Errors at 7-8. She observes that, to the extent that Dr.

9

Claiborn testified that Dr. Starbird's notes were inconsistent with other treating source notes of record, he had in mind the CHCS treatment notes. *See id*. at 7; *see also* Record at 479-80. When her counsel asked Dr. Claiborn how CHCS had rated the severity of her depressive disorder, he answered that they had given her a GAF of 50 "but, you know, again, that presumably represents general level of functioning, including the impact of whatever physical problems she's got, whatever occupational problems she had. I believe, at that time, she wasn't working either." *Id*. at 481-82. When the plaintiff's counsel questioned whether the DSM-IV specifically prohibited practitioners from including physical symptoms in arriving at a GAF score, Dr. Claiborn admitted that he did not know. *See id*. at 482. In fact, the DSM-IV does prohibit consideration of physical symptoms in assigning a GAF score. *See* Statement of Errors at 7; DSM-IV-TR at 32 ("The GAF Scale is to be rated with respect only to psychological, social, and occupational functioning. The instructions specify, 'Do not include impairment in functioning due to physical (or environmental) limitations.'"). She reasons that because "Dr Claiborn did not have an understanding of what criteria [are] used in determining GAF score . . ., his opinion is flawed and does not constitute substantial evidence." Statement of Errors at 7.

While Dr. Claiborn erroneously assumed that the GAF score reflected physical limitations, I am unpersuaded that his misunderstanding vitiated the administrative law judge's reliance on his testimony for the point that Dr. Starbird's opinion was at odds with CHCS treating notes. Dr. Claiborn testified that although Dr. Starbird diagnosed the plaintiff as suffering from post-traumatic stress disorder ("PTSD"), there was no indication in the CHCS notes of symptoms indicative of the presence of that condition. *See* Record at 480-81. His misunderstanding concerning the components of the GAF score has no discernible bearing on his testimony regarding the discrepancy between Dr. Starbird's findings and the CHCS notes on the

10

question of whether the plaintiff suffered from PTSD. The GAF score reflected CHCS's assessment of the severity of the plaintiff's depressive disorder, not whether CHCS detected the existence of signs or symptoms of PTSD. *See id.* at 481-82.[4]

For all of these reasons, the plaintiff demonstrates no reversible error in the administrative law judge's handling of the question of her mental RFC.

### C. Credibility Assessment

The plaintiff finally assails, at some length, the administrative law judge's assessment of the credibility of her complaints of physical limitations stemming from degenerative disc disease of her cervical and lumbar spine and an injury to her right shoulder. *See* Statement of Errors at 8-13. In so doing, she faces an uphill battle. "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987). She falls short of making a persuasive case that the credibility assessment should be disturbed. The administrative law judge offered a number of specific reasons for finding the plaintiff's complaints of disabling physical restriction less than credible. *See* Record at 234-35. On its face, the plaintiff's statement of errors challenges only a portion of those reasons. *Compare id.* *with* Statement of Errors at 8-13. Even assuming *arguendo* that all of the challenged rationales

---

[4] The plaintiff further argues that because Dr. Claiborn is a non-examining doctor, his testimony is required to be consistent with the medical record, a proposition for which she cites Social Security Ruling 96-6p ("SSR 96-6p"). *See* Statement of Errors at 8. She contends that Dr. Claiborn's opinion is inconsistent with those of treating and examining doctors of record and that consistency with opinions of non-examining sources does not bolster its credibility. *See id.* Per SSR 96-6p, an adjudicator is to consider "the consistency of the opinion with the record as a whole, including other medical opinions[.]" SSR 96-6p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008), at 130. "Medical opinions" can be offered by non-examining physicians and psychologists as well as by treating and examining sources. *See id.* Thus, the administrative law judge supportably considered whether Dr. Claiborn's opinion was consistent with the plaintiff's mental health history, her activities, and the opinions of other DDS non-examining sources.

11

are unsupported by substantial evidence, the overall credibility assessment remains supported by specific findings. *See id.* Deference hence must be paid to it.[5]

One further point bears discussion. Under the rubric of a challenge to the administrative law judge's credibility finding, the plaintiff assails his rejection of the RFC opinion of DDS examining consultant Bruce Trembly, M.D., who deemed her limited, *inter alia*, to lifting no more than two pounds occasionally, standing and/or walking with normal breaks for two hours in an eight-hour workday, and sitting for only 20 minutes at a time. *See* Statement of Errors at 8-13; Record at 429-31.

The administrative law judge rejected the Trembly opinion, stating:

> [H]e was clearly basing these extreme limitations on the claimant's statements regarding her pain, and the undersigned, for the reasons discussed in this decision, does not find her allegations entirely credible.
>
> ***
>
> Dr. Trembly's opinion that the claimant can do less than a full range of sedentary work is given little weight, as it is not supported by objective medical findings and is based on the claimant's representation of her limitations, which the undersigned does not find fully credible. Dr. Webber [a medical expert present at the plaintiff's hearing] testified that the radiological evidence would tend to support a conclusion that the claimant has back and shoulder pain, but that the essentially negative motor and sensory examinations indicate that her alleged limitations are primarily subjectively based.

*Id.* at 234-35.

As the plaintiff observes, *see* Statement of Errors at 8-10, Dr. Trembly cannot fairly be said to have based his RFC opinion solely on her subjective complaints. He noted some abnormal findings on examination, including pain and muscle spasm on palpation of the

---

[5] Specific findings unchallenged by the plaintiff include the administrative law judge's citation to (i) the results of a 2004 examination by DDS consultant David Axelman, M.D., describing normal gait, sensation, and strength, despite some point tenderness and limitation of motion in the plaintiff's back, *see* Record at 233, 106, (ii) a May 2006 progress note of Dr. Cox indicating that the plaintiff was no longer getting sufficient relief from hydrocodone but was able to ride her bike and walk when using Percocet, *see id.* at 233, 356, and (iii) a November 2007 treating source note indicating that the plaintiff was helping to move her possessions into a new house, although she reported that she was working at her own pace and not lifting "heavy" items, *see id.* at 233, 422.

plaintiff's shoulders, and referenced MRI findings disclosing arthrosis and tendonitis in her left shoulder, severe degenerative disc disease in her lumbar spine, and extensive spondylosis in her cervical spine. *See* Record at 426. Nonetheless, the administrative law judge supportably found that Dr. Trembly's assessment of the plaintiff's credibility colored his view of the extent of her physical restrictions, resulting in the "extreme limitations" noted in the RFC. *Id*. at 234. Tellingly, in summarizing his RFC opinion, Dr. Trembly stated:

> She has relatively little in the way of impairment if she does only a few movements as described in the [RFC] questionnaire, but with repeated and persistent movement she becomes symptomatic, and I think this is quite genuine without any significant symptom magnification. Clearly, this woman has been doing heavy laboring work, for which her small frame is not suited.

*Id*. at 426. In addition, in explaining particular components of his RFC assessment, Dr. Trembly expressly relied in part on the plaintiff's own statements of her limitations. *See, e.g., id*. at 429 (offering, as explanation for RFC finding regarding standing and/or walking: "did road construction flagging for 2 mos and she states she could not stand more than 2 hours – after a break, could probably stand another 1½ - 2 hours[.] Muscle pain in shoulders/pelvis limits standing.").

Finally, while it is true, as the plaintiff points out, *see* Statement of Errors at 11-13, that Dr. Webber testified that he would expect, based on the significant abnormalities of the plaintiff's spine, that she would suffer "axial" pain, meaning pain of a weight-bearing joint brought on by motion, such as bending and twisting, *see* Record at 486-87, and that he thought the plaintiff's testimony with respect to her pain could reasonably be related to the findings he saw in the medical record, *see id*. at 488, he also testified that the degree of pain suffered is "most subjective[,]" *id*. at 487, and that "some people can have bad findings on X-ray and they have no symptoms or they can have relatively few findings and have a good amount of

symptoms so it's awfully hard to go solely on the basis of the X-ray[,]" *id*. at 488. In that sense, as counsel for the commissioner contended at oral argument, the Webber testimony simply puts credibility back in play. As discussed above, I find no basis on which the court should disturb the administrative law judge's credibility finding.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of March, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge